# COMMON PLEAS OF LACKAWANNA CO.

## IN EQUITY.

### MONROE'S EXECUTOR *v.* THOMPSON.

The appointment of a receiver, even before appearance and answer, is an act within the jurisdiction of a Court of Equity, but it is an act of such importance that it should be exercised only in a case of extreme importance, and when the discretion of the court is clearly forced in that direction.

Motion for the appointment of a receiver before appearance and answer.

*R. W. Archbald Esq.*, for motion.
                    *Contra.*

Monroe & Thompson were engaged in business in Philadelphia and Scranton. In Philadelphia, the firm name was John Monroe & Co., and in Scranton the name was Frank Thompson & Co. Monroe died, and his executor asks the court to appoint a receiver for the firm of Frank Thompson & Co. The facts alleged in the affidavits are fully stated in the

OPINION BY HAND, J.

This motion has been argued before us with zeal and learning on both sides. We have no doubt of our power, in a case of sufficient importance and necessity, to appoint a receiver before appearance and answer. It is, however, a serious and summary act and fraught with delicate and possibly dangerous consequences, and the power should be exercised only in a case of extreme importance, and where our discretion is clearly forced in that direction. The question then is, in this case, are the rights of the plaintiff, under the facts presented, so clearly in jeopardy as to require the strong arm we are asked to use, and if we use it do we infringe upon the rights of the defendant in any respect.

The bill of plaintiff executor alleges a co-partnership

heretofore of John Monroe and Frank Thompson, under the name of Frank Thompson & Co.; the decease of John Monroe, June 15th, 1878, appointment of plaintiff as executor; that defendant continues in possession of stock, fixtures, accounts, books, chattels and effects of said firm; the insolvency, upon information and belief, of the defendant; that the business is not being closed, but continued in defendant's interest, with the good will and use of furiture and fixtures for his own private advantage; then wasting and mismanaging of the effects of the firm and incurring of unnecessary and extravagant expenses; that the liabilities of the firm are largely in excess of its available assets, and the firm is heavily indebted to the estate of decedent; that defendant neglects and refuses to account for and pay over to the plaintiff the interest of decedent in the co-partnership.

The affidavits of plaintiff filed support the above allegations and show that the partnership existed from 1871 to 1878, when it was dissolved by the death of John Monroe. That defendant is in possession of the assets of the firm; that nothing has been done by defendant to close up the business except to pay a few debts; that he continues the business, using fixtures and liquors, and enjoying the good will of the firm; that he has mixed the stock of the firm with his own stock; that the liabilities at dissolution were about $21,000, of which between $16,000 and $17,000 were due to John Monroe & Co., of which firm John Monroe was the main partner. The assets of the firm were $15,000, of book accounts of which not over $5,000 were collectible;of ten shares of City Bank stock; of merchandise valued at $4,000; of furniture and fixtures, value unknown; that defendant refuses to pay over the interest of decedent; that plaintiff is unable to obtain a promise of settlement and he believes the defendant is insolvent.

The defendant files his affidavit showing that since 1872 there have been two firms, one in Philadelphia, called John Monroe & Co., the other in Scranton, called Frank Thompson & Co.—considered a branch store—and that

Monroe and Thompson were equal partners in both firms.

That after the death of Monroe, defendant rendered the executor a just, true and faithful account of the business of the Scranton firm and demanded a like statement of the business of the Philadelphia firm, which the executor has failed to render; that on July 26, 1878, an agreement was entered into between the executor of Monroe and the defendant, a copy of which is attached to his affidavit. By its terms Thompson was to settle the Scranton firm matters, and Monroe the Philadelphia firm matters. Thompson releases to the executor the available assets, except accounts, in Philadelphia, who agrees to pay the debts of the Philadelphia firm. The accounts collected both in Philadelphia and Scranton are to be divided equally. Attached to the agreement is a schedule, called an "Inventory of property of Frank Thompson & Co., and a basis of settlement made same day as per contract." This settlement includes the merchandise, furniture and fixtures, cash and bank stock; deducts liabilities, and divides the balance, making $895.97, to be paid to the executor. Defendant says he has complied with this agreement in all respects, except paying the balance over of $895.97, and the one-half of the amounts collected, and the reason he has not done this is because the executor has failed to render an account of money received by him for accounts collected, and he has reason to believe sufficient has been collected to offset the sums due to him from Thompson.

. Defendant declares that he is not insolvent; that he has paid all the debts of the firm of Frank Thompson & Co., except an item of $70, which is in dispute. That the debts of John Monroe & Co., of Philadelphia, are all paid; that there are no claims against him (Thompson) except those arising from said agreement, which he is ready to pay upon being furnished with a statement of the accounts collected for the firm of John Monroe & Co. He denies any wastefulness or extravagance, asserts his constant attention to the business and that the same is properly conducted; also that he went to Philadelphia pursuant to the appointment with the executor to settle matters on

Sept. 18, 1878, but plaintiff declined to meet him.

By a supplemental affidavit, the plaintiff alleges that the agreement of 26th July, 1878, was unadvisedly entered into; that he has carried out his part of the agreement, has closed the business of John Monroe & Co., has collected certain accounts of the firm, what he has received has been applied to the debts of the firm, and the liabilities are all paid, except a debt due himself of $600 for rent.

That he has placed the accounts of the firm in the hands of an attorney, who has been unable to collect them, and a statement of these accounts he has rendered to defendant from the books of the firm, and attaches a balance sheet furnished by Thompson of the accounts of the firm of Frank Thompson & Co.

From the undisputed facts of this case (and it is only these that we have at present to deal with) it appears, that the agreement of 26th July, 1878, has been acted upon by both parties and its most material parts fulfilled. This agreement is undoubtedly binding between the parties, whatever it might have been as regards third parties. It was a practical settlement, or at least process of settlement, of all matters of both firms This agreement on its face appears not only to be a settlement, but so far as we can at present judge, a fair and honorable one to both parties and not only not illadvised in our opinion, but pre-eminently proper. By it Thompson accounts for everything, even to the good will of the Scranton firm; surrenders his right as surviving partner to close out the Philadelphia firm, and all his right to the personal available assets, and only seeks from the executor an accounting for the half of the accounts collected. He agrees to pay over the balance due from the Scranton firm, and to account for half of the accounts collected here. The only matters then that we discover between the two parties to this suit, are the payment of $895.97 (which the defendant does not deny, but promises to pay on receiving the proper accounting from the executor of Monroe for accounts of Monroe & Co. collected) and the mutual accounting between plain-

tiff and defendant for accounts collected by each.

It is alleged that Mr. Thompson is insolvent and is mis managing,but this is not sufficiently sustained by affidavits or facts, and is denied on the part of the defendant, and so far as the plaintiff is concerned he is wholly protected in the amount agreed to be due him. The furniture and fixtures, the bank stock, and stock in trade appear not to be reduced, and are still where they can be reached to secure the balance due under the agreement, the debts are paid. What amount is due and from whom, under the mutual accounting, is left uncertain,but is yet to be ascertained; not a long time has elapsed since the dissolution of the firm; neither does there appear to be negligence or mismanagement. From all the facts we can discover no reason to put forth the strong and dangerous power we are asked to exercise. It would destroy or injure the good will of the concern which certainly belongs, until accounted for, one-half to the surviving partner, and it is no injury to the plaintiff that he uses it for himself; only in this way could he preserve it for both,and under the agreement of 26th July,1878, it is a fair question if it does not belong to the defendant. In fact, from the spirit of fairness manifested by both parties to this suit up to the time of filing this bill, we have little doubt, that the same spirit continued will settle matters much better than this court can. We, however, have jurisdiction of the case, and at the proper time will take any steps needed to ascertain and settle all the rights of the parties. If, as we intimated at the argument, the counsel will consent, we will appoint a Master to ascertain all the facts at once, but at present we must decline to appoint a receiver.